**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDER GOLDMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BLUE OWL CAPITAL INC., DOUGLAS I. OSTROVER, MARC S. LIPSCHULTZ, and ALAN KIRSHENBAUM, <br><br> Defendants. | Case No. 1:25-cv-10047-JPC-OTW |

**ALEXANDER GOLDMAN'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**NOVA SCOTIA PLANS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND**
**<u>APPROVAL OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     THE NOVA SCOTIA PLANS SHOULD NOT BE APPOINTED AS LEAD PLAINTIFF
        BECAUSE THEY ARE INADEQUATE AND ATYPICAL .......................................... 2

        A.      Goldman's Inquiry Into The Nova Scotia Plans Revealed That They Have
                Previously-Undisclosed Investments And Other Potential Private Investments With
                Blue Owl ........................................................................................................ 2

        B.      The Nova Scotia Plans Should Be Disqualified Because They Failed To Disclose
                Their Investments And Profits In Blue Owl Debt Securities.................................. 6

        C.      The Nova Scotia Plans Should Be Disqualified Because They Own Blue Owl Debt
                Securities And Left Open The Possibility That They Have Other Undisclosed
                Private Investments With Blue Owl ....................................................................... 7

        D.      Goldman Should Be Permitted To Conduct Discovery Into The Nova Scotia
                Plans.............................................................................................................. 9

III.    GOLDMAN SHOULD BE APPOINTED AS LEAD PLAINTIFF BECAUSE HE IS THE
        PRESUMPTIVELY MOST ADEQUATE PLAINTIFF AND THE PRESUMPTION HAS
        NOT BEEN REBUTTED ...................................................................................... 10

IV.     GOLDMAN'S SELECTION OF COUNSEL SHOULD BE APPROVED..................... 11

V.      CONCLUSION.................................................................................................... 11

**TABLE OF AUTHORITIES**

**CASES**

*Broadfoot v. Barrick Gold Corp.*,
2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017) ............................................................................. 10

*Coan v. B. Riley Fi*n.*, Inc. (*"B. Riley,I"),
2024 WL 5301847 (C.D. Cal. Aug. 8, 2024) ............................................................................. 10

*Ferreira v. Funko, Inc.*,
2020 WL 3246328 (C.D. Cal. June 11, 2020) ............................................................................. 7

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
529 F. Supp. 3d 385 (E.D. Pa. 2021) ......................................................................................... 8

*In re B. Riley Fi*n.*, Inc. (*"*B*. Riley II"),
2025 WL 2701764 (C.D. Cal. Feb. 4, 2025) .......................................................................... 9, 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 476 (S.D.N.Y. 2002) ............................................................................................... 8

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................................................................... 8

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015) ........................................................................................ 8

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ........................................................................... 6

*Karp v. Diebold Nixdorf, Inc.*,
No. 19-cv-6180, 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ................................................. 6

*Micholle v. Ophthotech Corporation*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ........................................................................... 6

*Nager v. Websecure, Inc.*,
No. 97-cv-10662, 1997 WL 773717 (D. Mass. Nov. 26, 1997) ................................................. 7

*Tomaszewski v. Trevena, Inc.*,
383 F. Supp. 3d 409 (E.D. Pa. 2019) ......................................................................................... 7

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ......................................................................................... 11

*Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ...................................................................................... 11

*Williams v. Block.One*,
  2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) .................................................................... 6

**<u>STATUTES</u>**

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................. 1, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................ 1, 11

15 U.S.C. § 78u-4(a)(3)(B)(iv) ........................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................... 11

**<u>RULES</u>**

Rule 23 of the Federal Rules of Civil Procedure ......................................................... 1, 2

Plaintiff and Lead Plaintiff Movant Alexander Goldman ("Goldman") submits this memorandum of law in opposition to the competing motion by the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan (the "Nova Scotia Plans") for appointment as lead plaintiffs and approval of lead counsel (Dkt. No. 21). The Nova Scotia Plans should be disqualified from consideration for appointment because they failed to disclose their investments in Blue Owl Capital Inc. ("Blue Owl") debt securities and have not foreclosed the possibility that they have other private investments with Blue Owl. Goldman has the next largest financial interest and is adequate to represent the class. As such, Goldman should be appointed as lead plaintiff and his selection of counsel should be approved.

## I.    INTRODUCTION

Goldman and the Nova Scotia Plans filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* Dkt. Nos. 18, 21.

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption may be rebutted by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is rebutted, the presumption

1

moves to the plaintiff with the next largest financial interest until a suitable lead plaintiff is identified.

Here, while the Nova Scotia Plans claim a larger financial interest than Goldman (*see* Dkt. Nos. 20-2, 24-1), the Nova Scotia Plans are inadequate and atypical because they have undisclosed investments with Blue Owl and may have other private investments with Blue Owl that subject them to unique defenses that will become a distraction at later stages in this litigation. As such, the Nova Scotia Plans are inadequate and atypical, and should be disqualified from consideration for appointment as lead plaintiff.

Plaintiff Goldman is the only remaining *bona fide* movant, has a substantial financial interest in the relief sought by the class, and satisfies the typicality and adequacy requirements of Rule 23. As such, Goldman is the presumptively most adequate plaintiff. Since there is no basis to rebut this presumption, Goldman should be appointed as lead plaintiff, and his selection of counsel should be approved.

## II.    THE NOVA SCOTIA PLANS SHOULD NOT BE APPOINTED AS LEAD PLAINTIFF BECAUSE THEY ARE INADEQUATE AND ATYPICAL

### A.    Goldman's Inquiry Into The Nova Scotia Plans Revealed That They Have Previously-Undisclosed Investments And Other Potential Private Investments With Blue Owl

Blue Owl provides financial products and services to public pension funds like the Nova Scotia Plans. Blue Owl's most recent annual report explains that it is an "alternative asset manager" that "deploys private capital . . . on behalf of institutional and private wealth clients" to generate income.[1] Blue Owl's clients include "a diversified mix of institutional investors, including

---

[1] *See* Blue Owl Capital Inc. Annual Report on Form 10-K, dated February 21, 2025, p. 7, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001823945/000182394525000013/owl-20241231.htm (last visited February 13, 2026).

prominent *public* and private *pension funds* . . . [and] *asset managers*" that may include Nova Scotia Plans and/or the Nova Scotia Pension Services Corporation ("NS Pension"), which manages and represents the Nova Scotia Plans in this action. *Id.*

Given that the Nova Scotia Plans may have private investments or other contractual relationships with Blue Owl, counsel for Goldman sent a letter to counsel for the Nova Scotia Plans on February 9, 2026 (more than one week before opposition memoranda were due) requesting information regarding any undisclosed relationship between Blue Owl and the Nova Scotia Plans and/or NS Pension. *See* Declaration of Gregory B. Linkh in Support of Alexander Goldman's Opposition to the Nova Scotia Plans' Motion ("Linkh Decl. ISO Opp."), Ex. 1. In the letter, Goldman inquired as to whether the Nova Scotia Plans or NS Pension have ever had "any contractual, advisory, service, or other business relationship with Blue Owl Capital Inc. or its related entities," and whether they had any other investments with Blue Owl entities. *Id.*

Counsel for the Nova Scotia Plans responded to Goldman by letter on February 13, 2026, the Friday before a federal holiday weekend, and the last business day before opposition memoranda were due.

In their response, the Nova Scotia Plans revealed for the first time that Goldman's suspicion was correct. They had in fact invested in previously-undisclosed Blue Owl debt securities, but emphasized that the transaction occurred before the class period in this action. *See* Linkh Decl. ISO Opp., Ex. 2 ("Before the Class Period, [the Nova Scotia Plans] each purchased a bond issued by Blue Owl Finance LLC, an indirect subsidiary of Blue Owl Capital, Inc., which they held throughout the Class Period."). Blue Owl Finance LLC is an entity through which Blue Owl issues

3

debt securities.[2] Counsel for the Nova Scotia Plans provided no further information regarding the nature of the debt securities. Notably, as discussed later, the Nova Scotia Plans failed to disclose that they had received substantial interest payments on these debt securities during the class period.

In their response, the Nova Scotia Plans also narrowly denied that they had *certain* types of relationships with *certain* Blue Owl entities during *certain* timeframes (*see id.*), but their partial denial fell short of a full denial. Specifically, the Nova Scotia Plans and NS Pension stated that they *currently* do not "have any contractual relationship with *Blue Owl Capital, Inc.*" while saying nothing about the various related entities through which Blue Owl does business, or whether they did have such a relationship in the past, including during the class period. *Id.* (emphasis added).

Given the conspicuous lack of information in the Nova Scotia Plans' response, Goldman sent a follow-up letter the same day he received the response (February 13, 2026), requesting clarification. *See* Linkh Decl. ISO Opp., Ex. 3. Goldman sought clarity, for example as to whether the Nova Scotia Plans "ever had a contractual relationship with Blue Owl Capital Inc., or any related entities (including OBDC and OBDC II identified in the complaint)," whether they purchased the securities of Blue Owl "related entities . . . during the class period," and details regarding the previously undisclosed bonds. *Id.*

Counsel for the Nova Scotia Plans responded by letter at 7:00 p.m. EST on February 17, 2026, the day Goldman's opposition memorandum was due. *See* Linkh Decl. ISO Opp., Ex. 4. In the clarification, the Nova Scotia Plans repeatedly disparaged Goldman and made unsubstantiated claims that Goldman was engaged in a "fishing expedition." Yet, as the Nova Scotia Plans acknowledge, if it was not for Goldman asking these questions the Nova Scotia Plans would not

---

[2] *See, e.g.*, Blue Owl Capital Inc. Annual Report on Form 10-K, dated February 21, 2025, p. F-37 ("In May 2023, [Blue Owl Capital Inc.], through its indirect subsidiary, Blue Owl Finance LLC, issued $59.8 million aggregate principal amount of 7.397% Senior Notes due 2028.").

have revealed its additional transactions that were not included in its certifications or financial interest calculations. Moreover, the Nova Scotia Plans changed their story again with respect to their bonds. While they earlier represented that they purchased them before the class period and held them through the class period. In the clarification, the Nova Scotia Plans now state that the bonds they originally purchased "were exchanged 1:1 [for] a different ISIN [debt security] on or about October 16, 2024." *Id.* p. 1. The Nova Scotia Plans did not identify the new security or who issued it, other than to note it was a bond. The Nova Scotia Plans did, however, reveal for the first time that they received $32,812.50 in interest payments on their (presumably) Blue Owl bonds ***during the class period****. See id.* Despite their clarification letter being 3 pages long, the Nova Scotia Plans did not clarify whether they ever had a contractual relationship with any Blue Owl entities (including OBDC and OBDC II identified in the complaint) during the class period, or whether they purchased the securities of other Blue Owl related entities during the class period.

The shifting narratives in Nova Scotia Plans responses, and their counsel's continued refusal to answer Goldman's basic questions, while simultaneously claiming they have not had enough time to review the full nature of the Nova Scotia Plans' relationship with Blue Owl, necessitates discovery. Apparently fearful of what discovery may uncover, counsel for the Nova Scotia Plans appears to threaten Goldman with burdensome and irrelevant discovery if he continues seeking the truth. The Nova Scotia Plans warned: "if you continue on this present course and press for PSLRA discovery, we will need to reciprocally seek discovery" regarding, among other things, whether Goldman has ever "fallen behind on child support payments, been referred to collections, [or] defaulted on a loan," even though these topics (unlike a private investment relationship with the defendant company) do not bear on Goldman's adequacy. *See id.* p. 3.

5

In sum—the limited information uncovered by Goldman about the Nova Scotia Plans, and the Nova Scotia Plans' unwillingness to be forthcoming with information that bears on their adequacy, renders them inadequate. At the very least, the Court should grant Goldman discovery into the Nova Scotia Plans in order to obtain answers to the reasonable questions he posed regarding their adequacy.

**B.      The Nova Scotia Plans Should Be Disqualified Because They Failed To Disclose Their Investments And Profits In Blue Owl Debt Securities**

The Nova Scotia Plans admitted for the first time in response to Goldman's inquiry that they purchased Blue Owl bonds and received more than $32,000 in interest payments on those securities during the class period. Had Goldman not asked about it, the issue likely would have been concealed until class certification or summary judgment, where it would have jeopardized the class's claims.

The Nova Scotia Plans' failure to disclose their class period interest payments inflated their loss because such interest payments generated gains during the class period that offset their loss. Courts routinely disqualify movants that fail to provide complete and accurate transaction information, especially if the omitted information inflates the movants' losses. *See Williams v. Block.One*, 2020 WL 4505569, at *1 (S.D.N.Y. Aug. 4, 2020) (rejecting lead plaintiff movants that "failed to submit all of [their] trading data" because without complete data, the court could not properly evaluate the movants' lead plaintiff motions); *Micholle v. Ophthotech Corporation*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (holding date and pricing errors in a movant's submission "militate against appointment and render him inadequate to serve as lead plaintiff"); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (rejecting a movant in part because "publicly available trading data confirms the discrepancies" in the movant's submission); *Karp v. Diebold Nixdorf, Inc.*, No. 19-cv-6180, 2019

6

WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("The Court thus finds that the errors in the Aroras' submissions further militate against appointment and render them inadequate to serve as lead plaintiff.") (internal quotation marks and brackets omitted); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) ("[E]rrors in Erenoglu's sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class."); *Nager v. Websecure, Inc.*, No. 97-cv-10662, 1997 WL 773717, at *1 (D. Mass. Nov. 26, 1997) ("The inaccuracy may be explainable, but it casts sufficient doubt on Mr. Renzer's adequacy as a representative plaintiff."). The same result is warranted with respect to the Nova Scotia Plans.

The fact that the Nova Scotia Plans purchased their Blue Owl debt securities (on which they have gains) prior to the start of the class period does not change the analysis. *See Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) ("The greatest error is likely Gerber Kawasaki's failure to offset its claimed loss with gains for Funko securities purchased *before* the Class Period and sold *during* the Class Period"). The Nova Scotia Plans' failure to fully disclose all of their relevant transactions related to Blue Owl securities, even after being prompted to do so by the Plaintiff in this action, renders them inadequate, and is disqualifying.

C.     **The Nova Scotia Plans Should Be Disqualified Because They Own Blue Owl Debt Securities And Left Open The Possibility That They Have Other Undisclosed Private Investments With Blue Owl**

The Nova Scotia Plans and NS Pension have declined to fully disclaim that they had (or currently have) private investments with Blue Owl and/or Blue Owl related entities. In fact, the Nova Scotia Plans have already admitted that they currently own Blue Owl debt securities. All such investments render them inadequate and atypical for multiple reasons.

First, the Nova Scotia Plans are likely privy to non-public periodic reports, created by Blue Owl, related to the debt securities they own and any other product or service Blue Owl was

7

providing for the Nova Scotia Plans or NS Pension. It is well established that access to non-public information about the defendant company is disqualifying because it raises concerns that the movant may have relied on non-public information when purchasing its shares. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002) ("[W]here plaintiffs are privy to non-public information not available to other investors, they may be subject to unique reliance defenses making them atypical and inadequate class representatives."); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029-30 (N.D. Cal. 1999) (rejecting a lead plaintiff movant who would be "encumbered with the unique question" as to whether it acquired its shares based on non-public information and therefore "not fully in reliance on the market price"); *see aslo See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting a lead plaintiff movant where its transactions "raise[d] serious questions regarding [its] reliance on the alleged misrepresentations and omissions").

Second, the debt securities and any other private investments with Blue Owl create a conflict of interest. On the one hand, the Nova Scotia Plans are pursuing a settlement or judgment on behalf of the class against Blue Owl whereby Blue Owl would be liquidating or otherwise relinquishing its assets to compensate class members. On the other hand, Blue Owl's assets include investments from the Nova Scotia Plans that are paying out more than $30,000 per year to the Nova Scotia Plans. There is an open question as to whether the Nova Scotia Plans would settle the securities class action in a way that may fully compensate class members, but hinder Blue Owl's ability to continue to pay interest payments to the Nova Scotia Plans. As such, the Nova Scotia Plans are subject to competing interests, that do not align with the interests of the vast majority of class members who do not have private investments with Blue Owl. Such conflicts are disqualifying. *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,

8

529 F. Supp. 3d 385, 406 (E.D. Pa. 2021) (disqualifying a lead plaintiff movant because it had "a conflict of interest [with] the members of the putative class"). The Nova Scotia Plans should likewise be disqualified.

Third, the debt securities the Nova Scotia Plans purchased from Blue Owl and any other private investments that the Nova Scotia Plans or NS Pension have with Blue Owl would likely be governed by a written agreement among the parties that would govern the parties' rights and obligations in the event of a dispute, or put other restrictions on the Nova Scotia Plans' ability to represent the class in this action. The fact that the Nova Scotia Plans have not foreclosed this possibility at the outset is disqualifying. *See In re B. Riley Fin., Inc.* ("*B. Riley II*"), 2025 WL 2701764, at *3 (C.D. Cal. Feb. 4, 2025) (disqualifying a lead plaintiff movant where "discussion regarding the contours of the [securities purchase agreement]" signed by the movant "demonstrates the possibility that [the movant] may face unique defenses raised by Defendant").

**D.    Goldman Should Be Permitted To Conduct Discovery Into The Nova Scotia Plans**

Because the Nova Scotia Plans have not been forthcoming about the extent of their relationship to Blue Owl and their investments in Blue Owl securities, the extent of these issues are unclear. In fact, Goldman has already uncovered that the Nova Scotia Plans purchased (previously undisclosed) Blue Owl debt securities, and received interest payments on those securities during the class period. There also likely exists a purchase agreement in connection with the debt securities that may limit the Nova Scotia Plans' litigation rights against Blue Owl. As such, if the Court determines that the record is insufficient to disqualify the Nova Scotia Plans, but that further investigation may yield disqualifying information, Goldman respectfully requests that the Court grant him the opportunity to conduct discovery into the Nova Scotia Plans' investments and connection to Blue Owl. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv) (discovery of competing movants

9

permitted if movant "demonstrates a reasonable basis" for a finding that the presumptively most adequate plaintiff is inadequate); *Broadfoot v. Barrick Gold Corp.*, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy").

Discovery is particularly warranted here since the Nova Scotia Plans' story has changed in a matter of days and they continue to be elusive regarding basic facts about their relationship with Blue Owl. Indeed, their counsel has stated that they have been unable to provide fulsome responses within a week of Goldman's inquiry. Granting discovery appears to be the only way to get a complete response to Goldman's reasonable questions.

If the Nova Scotia Plans are appointed as lead plaintiffs, they will certainly face more invasive discovery. As such, courts have been finding it appropriate to conduct limited discovery at the outset to determine whether there are typicality and adequacy issues. *See Coan v. B. Riley Fin., Inc.* ("*B. Riley I*"), 2024 WL 5301847, at *7 (C.D. Cal. Aug. 8, 2024) (granting discovery at the lead plaintiff stage, reasoning that "[a]s a matter of case management, it would be preferable to engage now in limited discovery as to the adequacy of the Chin Trust to serve as lead plaintiff in this case"); *see also B. Riley II*, 2025 WL 2701764, at *3 (disqualifying the Chin Trust based on information uncovered in discovery).

### III. GOLDMAN SHOULD BE APPOINTED AS LEAD PLAINTIFF BECAUSE HE IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF AND THE PRESUMPTION HAS NOT BEEN REBUTTED

Since the Nova Scotia Plans should be disqualified, Goldman is the only remaining movant, has the largest financial interest, filed a timely motion, and satisfies the preliminary requirements of Rule 23. As such, he is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Goldman is the most adequate plaintiff may be rebutted only upon

10

"proof" that he "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof is apparent on this record.

Goldman is not aware of any reason he would be incapable of serving as lead plaintiff. Goldman was the initial (and only) investor to file a complaint on behalf of the class. Goldman is a tax accountant, has a CPA designation from CPA Canada, and has been managing his investments for approximately nine years. Dkt. No. 19-9. As such, Goldman is more than adequate to represent the class and should be appointed as lead plaintiff, and no other movant is entitled to further consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

## IV.    GOLDMAN'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel."). Here, Goldman selected Glancy Prongay Wolke & Rotter LLP ("GPWR") as lead counsel for the class—the firm filed the initial complaint in this action on behalf of Goldman following an investigation into the claims. GPWR has decades of experience successfully representing injured investors. *See* Dkt. No. 20-3. As such, Goldman's selection of counsel should be approved.

## V.    CONCLUSION

For the foregoing reasons, Goldman respectfully requests that the Court grant his motion and enter an Order: (1) appointing Goldman as lead plaintiff; (2) approving Goldman's selection of counsel; and (3) denying the Nova Scotia Plans' motion.

11

Respectfully submitted,

DATED: February 17, 2026 **GLANCY PRONGAY WOLKE & ROTTER LLP**

By:   _/s/ Gregory B. Linkh_
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
      clinehan@glancylaw.com
      prajesh@glancnylaw.com

_Counsel for Plaintiff Alexander Goldman and Proposed_
_Lead Counsel for the Class_

12

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel for Alexander Goldman certifies that this brief contains 3,568 words, which complies with the word limit of L.R. 7.1(c).

*/s/ Gregory B. Linkh*
Gregory B. Linkh

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On February 17, 2026, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 17, 2026, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh