## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER GOLDMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE OWL CAPITAL INC., DOUGLAS I. OSTROVER, MARC S. LIPSCHULTZ, and ALAN KIRSHENBAUM,<br><br>Defendants. | Case No.  1:25-cv-10047-JPC-OTW |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA PUBLIC SERVICE SUPERANNUATION PLAN AND THE NOVA SCOTIA TEACHERS' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL (ECF 21); AND (2) IN OPPOSITION TO COMPETING MOTION (ECF 18)**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

I.    THE COURT SHOULD APPOINT THE NOVA SCOTIA PLANS AS LEAD
      PLAINTIFFS ......................................................................................................... 3

      A.    THE NOVA SCOTIA PLANS HAVE THE LARGEST FINANCIAL
            INTEREST IN THE RELIEF SOUGHT BY THE CLASS ................................... 3

      B.    THE NOVA SCOTIA PLANS ARE ADEQUATE AND TYPICAL
            UNDER RULE 23 ................................................................................... 5

II.   THE COURT SHOULD APPROVE THE NOVA SCOTIA PLANS' CHOICE
      OF COUNSEL ........................................................................................................ 7

III.  THE COURT SHOULD DENY MR. GOLDMAN'S COMPETING MOTION .............. 8

IV.   CONCLUSION ....................................................................................................... 9

CERTIFICATE OF WORD COUNT ..................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
   No. 17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...........................................3, 5

*Chahal v. Credit Suisse Grp. AG*,
   No. 18-CV-2268, 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ...........................................1, 4

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)....................................................4

*Dookeran v. Xunlei Ltd.*,
   No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ....................................2, 6

*In re Emergent Biosolutions, Inc. Sec. Litig.*,
   No. 8:21-CV-00955-DLB, 2025 WL 654108 (D. Md. Feb. 27, 2025)....................................8

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .................................................................................2, 4, 6, 7

*Glauser v. EVCI Career Colleges Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ...........................................................................................6, 8

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 112 (S.D.N.Y. 2010) .......................................................................................2, 5, 6

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................3, 5

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ..............................................................................................7

*Micholle v. Ophthotech Corp.*,
   17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .......................................6, 9

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   No. 17-CV-06130 (LTS)(SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .........................4

*In re Orion Sec. Litig.*,
   No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ..............................2, 5, 6

*Perez v. Higher One Holdings, Inc.*,
   No. 14-cv-00755-AWT, ECF 161 (D. Conn.) ...........................................................................8

*In re Petrobras Sec. Litig.*,
   No. 1:14-cv-09662 (S.D.N.Y.)..................................................................................................8

*In re Silvercorp Metals, Inc.*, *Sec. Litig.*,
   No. 1:12-cv-09456, ECF 81 (S.D.N.Y.) ...................................................................................8

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)...........................................................................................1, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)..........................................................................................3, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .......................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(v) ....................................................................................................7

Private Securities Litigation Reform Act of 1995 ...................................................1, 2, 3, 5, 6, 7, 8

Securities Exchange Act of 1934...........................................................................................3, 5

## Rules

Fed. R. Civ. P. 23...............................................................................................1, 2, 3, 5, 6, 7, 8

Movants the Nova Scotia Plans[1] respectfully submit this Memorandum in further support of their motion for appointment as Lead Plaintiffs (ECF 21) and in opposition to the competing motion of Alexander Goldman (ECF 18).

**<u>INTRODUCTION</u>**

This Action is a putative class action securities fraud lawsuit on behalf of investors in Blue Owl securities.  As with all federal securities fraud class action lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process, and the statute's instructions are clear: the Court must appoint as lead plaintiff the "most adequate plaintiff," *i.e.*, the movant or group of movants that the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  To guide the Court's determination, the PSLRA creates a rebuttable presumption favoring the movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, the Nova Scotia Plans satisfy both requirements and are the movants clearly entitled to the PSLRA's "most adequate plaintiff" presumption.

First, the Nova Scotia Plans have the largest financial interest under any relevant metric.  Although the PSLRA does not define "financial interest," courts in the Second Circuit, including this District, routinely assess financial interest with reference to the four so-called *Lax* factors: (1) gross number of shares purchased; (2) net number of shares purchased; (3) net funds expended; and (4) net loss suffered.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268, 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018).  Here, the financial interest of the Nova Scotia Plans – even if considered individually – exceeds that of Mr. Goldman, the only competing movant, by overwhelming margins across all four *Lax* factors.  As such, it cannot reasonably be disputed that

---

[1]       Herein, unless otherwise noted, all terms are defined as they were in the Nova Scotia Plans' opening brief (ECF 23), all emphasis is added, and all internal quotations / citations are omitted.

the Nova Scotia Plans have alleged the largest financial interest in this Action and thus satisfy the first of the PSLRA's "most adequate plaintiff" criteria.

Second, the Nova Scotia Plans also strongly satisfy Rule 23's typicality and adequacy requirements, thereby meeting the second statutory "most adequate plaintiff" criterion. The Nova Scotia Plans' claims in this Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g.*, *In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010). In addition, the Nova Scotia Plans' significant losses give them a sufficient stake in this litigation's outcome to ensure vigorous advocacy on behalf of the Class, they are aware of no conflict between their interests and those of the Class, and, as discussed in greater detail below, they have selected counsel highly capable and experienced in prosecuting securities cases and efficiently managing complex litigation to serve as Lead Counsel for the Class. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS), 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr. 12, 2018).

Finally, as sophisticated institutional investors, the Nova Scotia Plans are paradigmatic Lead Plaintiffs, and their appointment would fulfill one of Congress's central purposes in enacting the PSLRA – namely, to "increas[e] the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733. Indeed, the Nova Scotia Plans are pension funds, the institutional investor type that Congress specifically highlighted as particularly well suited to lead securities class actions and protect class member interests, given that their own beneficiaries are themselves small investors. *Id.* Mr. Goldman, an individual, small-loss retail investor, cannot say the same.

2

For the reasons set forth herein, the Nova Scotia Plans respectfully submit that the Court should grant their motion in its entirety and deny Mr. Goldman's competing motion.

## ARGUMENT

### I.    THE COURT SHOULD APPOINT THE NOVA SCOTIA PLANS AS LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085, 2018 WL 1634872, at *3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon "***proof***" that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  Here, the Nova Scotia Plans are quite clearly the most adequate plaintiffs within the PSLRA's meaning.

### A.    The Nova Scotia Plans Have the Largest Financial Interest in the Relief Sought by the Class

The Nova Scotia Plans indisputably satisfy the PSLRA's first criterion for the "most adequate plaintiff" presumption because they have the largest financial interest in this litigation. For claims arising under Exchange Act §10(b), courts in this District and the Second Circuit generally assess financial interest with reference to the four *Lax* factors: (1) gross number of shares purchased; (2) net number of shares purchased; (3) net funds expended; and (4) net loss suffered. *See, e.g.*, *Foley*, 272 F.R.D. at 128; *Chahal*, 2018 WL 3093965, at *4 (same); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov.

3

13, 2017) (same); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007).

Under any of the foregoing metrics, the Nova Scotia Plans indisputably have the largest financial interest in this litigation, by orders of magnitude, among the two competing movants. The table below sets forth the Nova Scotia Plans' financial interest, per the *Lax* factors, compared to that claimed by Mr. Goldman, the only competing movant:

| Movant | Gross Shares Purchased / Acquired | Net Shares Purchased / Acquired | Net Funds Expended | Loss (LIFO) |
|---|---|---|---|---|
| Nova Scotia Plans | **73,910** | **39,090** | **$671,777** | **$116,223** |
| *PSSP alone* | *40,960* | *21,670* | *$372,399* | *$64,437* |
| *TPP alone* | *32,950* | *17,420* | *$299,378* | *$51,785* |
| Alexander Goldman [2] | 2,505 | 2,496 | $43,086 | $8,541 |

As the table illustrates, the Nova Scotia Plans, considered as a movant group in the aggregate, have a massively larger financial interest than Mr. Goldman as assessed under all of the four *Lax* factors, by margins of: (1) 73,910 to 2,505 in shares of common stock purchased or acquired; (2) $671,777 to $43,086 in net funds expended; (3) 39,090 to 2,496 in net shares purchased or acquired; and (4) $116,223 to $8,541 in investment losses.[3]  Even considered individually, both of the two Nova Scotia Plans – PSSP and TPP – likewise lead Mr. Goldman across all four *Lax* factors by significant margins: (1) 40,960 (PSSP) / 32,950 (TPP) to 2,505 in shares purchased or acquired; (2) 21,670 (PSSP) / 17,420 (TPP) to 2,496 in in net shares purchased

---

[2]    In addition to his purchases of Blue Owl common stock, Mr. Goldman also appears to have entered into 24 option contracts during the Class Period, whereby he sold stock to open call options and purchased stock to close them (if they did not expire), and thereby appears to have profited from those option transactions by $185.  For comparative purposes, the chart above omits these options contracts from both the "Shares Purchased / Acquired" and "Net Shares Purchased / Acquired" columns, while attempting to reflect his expenditures on and proceeds from these option contracts in its calculations of "Net Funds Expended" and "Loss."

[3]    The loss chart (ECF 24-1) submitted on the Nova Scotia Plans' behalf incorrectly characterized two post-Class-Period transactions on January 2, 2026 as stock sales when, instead, they were intra-account transfers.  Their recalculated investment losses are $116,223 (LIFO), a reduction of $1,072 (0.914%), or $208,041 (FIFO), a reduction of $2,339 (1.112%).  A corrected loss chart is submitted herewith.

4

or acquired; (3) $372,399 (PSSP) / $299,378 (TPP) to $43,086 in net funds expended; and $64,437 (PSSP) / $51,785 (TPP) to $8,541 in investment losses.  Thus, the Nova Scotia Plans together, as well as each of them separately, clearly possess a vastly larger financial interest in this litigation, under all of the governing factors, than Mr. Goldman.  The Nova Scotia Plans thus unambiguously have the largest financial interest in the relief sought by the Class within the PSLRA's meaning.

## B.  The Nova Scotia Plans Are Adequate and Typical Under Rule 23

In addition to possessing the largest financial interest in the outcome of this litigation, the Nova Scotia Plans plainly have made the requisite *prima facie* showings of typicality and adequacy within the meaning of Rule 23.  *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

First, the Nova Scotia Plans' claims in this litigation satisfy Rule 23(a)(3)'s typicality requirement because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.  The Nova Scotia Plans allege, like other Class members, that Defendants violated the Exchange Act, with scienter, by making false or misleading statements of material facts concerning Blue Owl or by omitting to state material facts necessary to make the statements they did make not misleading.  The Nova Scotia Plans, like other Class members, purchased Blue Owl securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions and were damaged by a series of partial corrective disclosures that drove Blue Owl's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy Rule 23's typicality requirement.  *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.

Second, the Nova Scotia Plans satisfy Rule 23(a)(4)'s adequacy requirement because their significant financial interest gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, the Nova Scotia Plans are aware of no conflict between their interests and those of the Class, and, as discussed in greater detail below, the Nova Scotia Plans have selected and retained to serve as Lead Counsel for the Class counsel that are highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently. *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at \*2-3.

Moreover, as large pension funds and sophisticated institutional investors, the Nova Scotia Plans' appointment as Lead Plaintiffs would further the PSLRA's legislative intent to "increas[e] the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733.  Courts in this District have consistently acknowledged Congress's intent in this regard.  *See, e.g.*, *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at \*6 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs."). The Nova Scotia Plans are the only movants before this Court that can satisfy this Congressional intent.

Because the Nova Scotia Plans have the largest financial interest in the relief sought by the Class and otherwise satisfy the applicable requirements of Rule 23, they are the presumptive "most adequate" plaintiffs of the Class within the PSLRA's meaning.  To overcome the strong statutory

6

presumption entitling the Nova Scotia Plans to appointment as Lead Plaintiff, the PSLRA requires *"**proof**"* that they are inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). *See also Foley*, 272 F.R.D. at 133 (rejecting opposition arguments against adequacy of presumptive lead plaintiff, finding that inadequacy "must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff"). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

**II.    THE COURT SHOULD APPROVE THE NOVA SCOTIA PLANS' CHOICE OF COUNSEL**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)).

Here, the Nova Scotia Plans have selected and retained Pomerantz as Lead Counsel for the Class. Pomerantz is based in this District, with offices in Chicago, Los Angeles, Paris, Tel Aviv, and London, and the firm regularly litigates federal securities fraud class actions in courts nationwide. As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See generally* ECF 24-3. In 2018, Pomerantz secured a $3 billion settlement in the action *In re Petrobras Sec. Litig.*, No. 1:14-cv-09662 (S.D.N.Y.), the largest securities class action settlement achieved in the Second Circuit in the past two decades. The Pomerantz Partner who will oversee this litigation, Matthew L. Tuccillo, has

over 26 years of relevant experience, including recently as lead litigation counsel in a securities fraud class action lawsuit where a $40 million class-wide settlement was granted final approval in 2025. *In re Emergent Biosolutions, Inc. Sec. Litig.*, No. 8:21-CV-00955-DLB, 2025 WL 654108, at *2 (D. Md. Feb. 27, 2025). His work on other securities fraud class action lawsuits within the Second Circuit includes serving as lead litigation counsel in *Perez v. Higher One Holdings, Inc.*, No. 14-cv-00755-AWT, ECF 161 (D. Conn.) (court granted final approval to $7.5 million settlement) and *In re Silvercorp Metals, Inc.*, *Sec. Litig.*, No. 1:12-cv-09456, ECF 81 (S.D.N.Y.) (court granted final approval to $14 million settlement). Thus, the Court may be assured that by approving the Nova Scotia Plans' selection of counsel, the Class members will receive the best legal representation available.

## III.   THE COURT SHOULD DENY MR. GOLDMAN'S COMPETING MOTION

As discussed in Section I., *supra*, the Nova Scotia Plans, by virtue of (i) possessing the largest financial interest in the relief sought by the Class by leading all *Lax* factors by large margins and (ii) satisfying Rule 23's typicality and adequacy requirements, clearly meet the PSLRA's unambiguous criteria to qualify as the presumptive "most adequate plaintiff" of the Class in this Action, and there is no basis for the presumption's rebuttal. It is thus self-evident that Mr. Goldman does not meet the statutory "most adequate plaintiff" criteria. This outcome mandates denial of his motion.

Nor would Mr. Goldman's appointment further Congress's goal of ensuring that federal securities class actions are led by sophisticated institutional investors. *See, e.g.*, *Glauser*, 236 F.R.D. at 188; *Ophthotech*, 2018 WL 1307285, at *6. As discussed, the Nova Scotia Plans are paradigmatic Lead Plaintiffs, as both institutional investors with billions of dollars in assets under management and more particularly pension funds, for a securities class action.

8

For all these reasons, Mr. Goldman's competing motion should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Nova Scotia Plans respectfully request that the Court issue an Order: (1) appointing the Nova Scotia Plans as Lead Plaintiffs for the Class; (2) approving the Nova Scotia Plans' selection of Pomerantz as Lead Counsel for the Class; and (3) denying Mr. Goldman's competing motion.

Dated:  February 17, 2026                    Respectfully submitted,

                                             POMERANTZ LLP

                                             /s/ Matthew L. Tuccillo
                                             Matthew L. Tuccillo
                                             Jeremy A. Lieberman
                                             J. Alexander Hood II
                                             600 Third Avenue, 20th Floor
                                             New York, New York 10016
                                             Telephone: (212) 661-1100
                                             Facsimile: (917) 463-1044
                                             mltuccillo@pomlaw.com
                                             jalieberman@pomlaw.com
                                             ahood@pomlaw.com

                                             *Counsel for Lead Plaintiff Movants the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan and Proposed Lead Counsel for the Class*

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan, certifies that this brief contains 2,711 words, which complies with the word limit of Local Civil Rule 7.1(c) and Rule V.d. of this Court's Individual Practices in Civil Cases.

Executed on February 17, 2026.

/s/ Matthew L. Tuccillo
Matthew L. Tuccillo

10