**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDER GOLDMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BLUE OWL CAPITAL INC., DOUGLAS I. OSTROVER, MARC S. LIPSCHULTZ, and ALAN KIRSHENBAUM, <br><br> Defendants. | Case No.  1:25-cv-10047-JPC-OTW |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
THE NOVA SCOTIA PUBLIC SERVICE SUPERANNUATION PLAN
AND THE NOVA SCOTIA TEACHERS' PENSION PLAN FOR APPOINTMENT
AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL (ECF 21)
<u>AND IN RESPONSE TO COMPETING MOVANT'S OPPOSITION (ECF 27)</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

      I.      PSSP/TPP Are The Presumptive "Most Adequate Plaintiffs" ................................ 2

      II.     Goldman Fails to Rebut The Presumption with "Proof" ....................................... 2

      III.    Goldman's Arguments and Conduct Demonstrate His Unfitness .......................... 6

      IV.    Goldman Does Not "Demonstrate" "Reasonable Basis" for Discovery ................. 8

CONCLUSION .................................................................................................................... 9

CERTIFICATE OF WORD COUNT .................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amberber v. EHang Holdings Ltd.*,
  2022 WL 409096 (S.D.N.Y. Feb. 10, 2022)................................................................6

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
  2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023)................................................................4

*Constance Sczesny Tr. v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y. 2004)................................................................................5

*Damri v. LivePerson, Inc.*,
  2024 WL 1242510 (S.D.N.Y. Mar. 22, 2024).............................................................5

*Ellenburg v. JA Solar Holdings Co.*,
  262 F.R.D. 262 (S.D.N.Y. 2009)................................................................................3

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006)........................................................................7

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007)................................................................................6

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)........................................................................4

*Nayani v. LifeStance Health Grp., Inc.*,
  641 F. Supp. 57 (S.D.N.Y. 2022)...............................................................................7

*Schaeffer v. Depaolo*,
  2023 WL 5153481 (E.D.N.Y. Aug. 10, 2023)............................................................2

*Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*,
  993 F. Supp. 2d 379 (S.D.N.Y. 2014)........................................................................6

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  2015 WL 1311073 (S.D.N.Y. March 23, 2015) .......................................................2, 5

## Statutes

15 U.S.C. §78u-4(a)(2)(A)(iv)..................................................................................3, 4

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)................................................................................2

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)........................................................................................2, 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)-(bb) .............................................................................8

15 U.S.C. §78u-4(b)(3)(B)...........................................................................................................8

Private Securities Litigation Reform Act of 1995 ...........................................................2, 4, 6, 7

## Rules

Fed. R. Civ. P. 23 ........................................................................................................2, 4, 8

## Other Authorities

29 C.F.R. §2520.103-6(b)(ii)(2)(i)...........................................................................................4

The Nova Scotia Plans, PSSP and TPP, respectfully submit this reply memorandum.

## INTRODUCTION

During the Class Period, institutional investors held **88% - 96.6%** of Blue Owl shares available.  PSSP and TPP, pension funds with $14.5 billion in assets serving public employees and teachers, are institutional holders with $116,000+ in losses from the fraud.  Yet, Goldman, a retail investor with ~$8,500 in losses, argues PSSP/TPP are atypical and inadequate because they each held a bond, issued by a different entity and purchased pre-Class Period, which made interest payments during the Class Period, a circumstance likely shared by many institutional Class members.  Goldman's claimed basis is his "investigation," *i.e.*, sending PSSP/TPP's counsel two letters with objectionable information requests.

PSSP/TPP could have refused to indulge Goldman's vague, overbroad inquiries.  Instead, demonstrating their suitability, they voluntarily provided information after reasonable inquiry, only to have Goldman wrongly claim it shows their atypicality and inadequacy and seek discovery.  In doing so, Goldman states positions – which PSSP/TPP reject – counter to the Class's interests.  His stance that fraud damages should be "offset" by interest payments wrongly concedes an affirmative defense, with greatest detriment to institutional investors most likely to hold bonds.

Goldman has neither rebutted the presumption favoring PSSP/TPP nor demonstrated reasonable basis for discovery.  Instead, he demonstrated his own inadequacy to represent the Class.

## PROCEDURAL HISTORY

Despite PSSP/TPP's presumptive status as most adequate plaintiffs, Goldman sent letters requesting, on an expedited timeline, unjustified and overbroad information regarding their actions "ever" taken regarding unidentified entities, products, and services.  Though he lacked entitlement, to conserve judicial resources, PSSP/TPP responded where possible after a reasonable

1

investigation. *See* ECFs 29-1 - 29-4. They confirmed lacking contractual relationship with Blue Owl, transacting only in Blue Owl common stock (NYSE:OWL) during the Class Period, and purchasing, pre-Class-Period, bonds issued by Blue Owl's indirect subsidiary, Blue Owl Finance LLC ("BOF"), that pay interval interest payments. They distinguished Goldman's purported legal authority, now abandoned. PSSP/TPP asked whether Goldman's counsel had informed him of their actions and sought authorization – no response followed.

**ARGUMENT**

**I.     PSSP/TPP Are The Presumptive "Most Adequate Plaintiffs"**

Goldman concedes PSSP/TPP are the presumptive PSLRA lead plaintiffs with the largest financial interest. (ECF 27) ("Opp.") at 2. As he previously acknowledged, Rule 23 typicality and adequacy inquiries now are "preliminary" (ECF 19 at 7) – a standard PSSP/TPP surpass. Their claims employ the same legal theory arising from the same facts as the Class's claims, and their losses ensure vigorous advocacy. They have no known conflicts of interest and retained highly qualified counsel. Their presumptive status is undisputed. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**II.    Goldman Fails to Rebut The Presumption with "Proof"**

Goldman claims a "***showing***" that PSSP/TPP "'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses'" rebuts the presumption. Opp. at 1. The standard is "***proof***." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2015 WL 1311073, at *9 (S.D.N.Y. March 23, 2015) ("Mere allegations…without a finding established on the record, are insufficient to rebut [the] presumption of adequacy."); *Schaeffer v. Depaolo*, 2023 WL 5153481, at *6 (E.D.N.Y. Aug. 10, 2023) (speculation is not "proof").

Despite PSSP/TPP's voluntary letters, Goldman relies on speculation, *e.g.*, a "***possibility*** [PSSP/TPP] have other private investments," "***may*** have other private investments," or "***may*** have private investments or other contractual relationships" with Blue Owl (Opp. at 1-2); Blue Owl's

2

clients "*may* include" PSSP/TPP (*id.* at 3); PSSP/TPP are "*likely* privy to non-public periodic reports" relating to potentially "*any other* product or service Blue Owl was providing" (*id.* at 7); an "open question" of whether a settlement *might* "hinder" "Blue Owl's" (not BOF's) "ability to [make] interest payments" (*id.* at 8); and PSSP/TPP's bonds are "*likely* governed by a written agreement" that "*may* limit [their] litigation rights" (*id.*).  These arguments lack factual basis, contradict PSSP/TPP's representations, and prove nothing.

*First*, Goldman claims PSSP/TPP "failed to disclose their investments in Blue Owl Capital, Inc. ('Blue Owl') debt securities" and undisclosed "class period interest payments [thereon] inflated their loss" (Opp. at 1, 6) because PSSP/TTP did not offset losses by the payments.  Not so.  The bonds were *not* issued by Blue Owl Capital, Inc., *i.e.* "Blue Owl," but by BOF, a non-Defendant.  ECFs 29-2; ECF 29-4.  Goldman's brief misleadingly conflates these entities. PSSP/TPP purchased the bonds *pre*-Class Period, they are *not* "the subject of the complaint," and they were not required in PSSP/TPP's Certifications.  15 U.S.C. §78u-4(a)(2)(A)(iv) (certification must include transactions "in the *security that is the subject of the complaint during the class period specified in the complaint*").

No provision or jurisprudence exists for the proposition that fraud damages are reduced by interest payments unrelated to the alleged fraud.  *Cf. Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 266 (S.D.N.Y. 2009) (requiring movant to offset losses by "any gain accruing…*from the alleged inflation of share prices*").  Goldman's authority (*Ferreira*), Opp. at 7, concerned pre-class period purchases of *the securities at issue* there.  PSSP/TPP's BOF bonds are *not* this litigation's subject, and their purchases predated the Class Period that *Goldman* (the initial plaintiff) pled.  Nor are interest payments therefrom analogous to gains from securities sold at fraud-inflated prices.  Even if, *arguendo*, PSSP/TPP applied the $31,812.50 offset Goldman urges,

3

their claimed losses ($83,410.53) would remain nearly *10x* Goldman's losses ($8,513).

Goldman's claim that omitting the BOF bonds and/or interest payments from PSSP/TPP's transactions list is a disqualifying "fail[ure] to provide complete and accurate transaction information" (Opp. at 6-7) fails. In his authorities, movants submitted materially inaccurate and/or incomplete Class Period transaction data in (*Williams*, *Micholle*, *Irving*, *Tomaszewski*, *Nager*) or materially overstated losses from (*Karp*) *the securities that were the litigation's subject*. *None* faulted a movant for omitting pre-class-period purchases of another issuer's debt or held that *interest payments* therefrom are a "transaction" under the PSLRA. *Contra, e.g.*, 29 C.F.R. §2520.103-6(b)(ii)(2)(i) ("A 'transaction with respect to securities' is any purchase, sale, or exchange of securities."); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *3 (S.D.N.Y. Oct. 4, 2023) (shares received as a dividend were not a "purchase" within §10(b) and fell outside PSLRA largest financial interest analysis). PSSP/TPP complied with the PSLRA's Certification requirement. 15 U.S.C. §78u-4(a)(2)(A)(iv)).[1]

*Second*, Goldman claims PSSP/TPP are disqualified for "currently own[ing] Blue Owl debt securities" – despite defining "Blue Owl" to mean Defendant Blue Owl Capital, Inc., not BOF – and because they "have not foreclosed the possibility" of other private investments with Blue Owl Capital, Inc. Opp. at 7. He asserts a conflict of interest, based on *speculation*, *e.g.*, PSSP/TPP *may* have access to non-public information or *may* be restricted in litigating this case by written agreements with BOF. *Id.* at 7-9.

These arguments fail. Goldman must rebut the "most adequate plaintiff" presumption with

---

[1]    PSSP/TPP caught and promptly corrected (ECF 30-1) a damages analysis error minimally overstating investment loss by inadvertently misclassifying a post-Class-Period transfer as a sale. ECF 28 at 4 n.3. The error did not impact PSSP/TPP's Certifications and transactions lists (ECF 24-2), is unrelated to BOF debt, and had *de minimis* loss impact too minor to "strike at the heart of Rule 23's adequacy requirement." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) (granting motion notwithstanding minor errors).

*proof*, not "possibility."  PSSP/TPP's Certifications and transactions lists are complete.  PSSP/TPP confirmed they only purchased Blue Owl common stock (NYSE:OWL) during the alleged Class Period.  ECF 29-2 at \*2.  Lacking any record basis, Goldman's arguments are speculative and cannot rebut the presumption.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see also Woburn*, 2015 WL 1311073, at \*9.  He speculates about non-public information debt holders *might* receive without explaining why or how they would receive it (or why such information would remain "non-public" after distribution to debt holders).[2]  His cases primarily involved movants who acknowledged non-public information access, *e.g.*, via merger due diligence (*Network Assocs.*) or a corporate officer (*Indep. Energy*).  Nor did he explain why BOF bond agreements would govern securities fraud claims against Blue Owl in this case.

Goldman's speculative conflict of interest challenge (Opp. at 8-9) fails.  He has not shown PSSP/TPP "has interests…antagonistic to other class members." *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).  Conflicts of interest "often take the form of 'differences in the type of relief sought,' the distribution of 'limited fund recoveries,' and the question of how to manage 'economic competitors within the same class.'" *Damri v. LivePerson, Inc.*, 2024 WL 1242510, at \*3 (S.D.N.Y. Mar. 22, 2024).  Goldman shows no similar issue here, failing, *e.g.*, to establish that Blue Owl is liable for BOF debt interest or that maximum class-wide damages would exceed sources of recovery (*e.g.*, D&O insurance, cash), necessitating Blue Owl's "liquidating" or "relinquishing" assets.  His case (*Halman*) is distinguishable, involving a movant separately pursuing an unrelated securities fraud opt-out lawsuit against the same defendant, necessitating "contradictory arguments" regarding "allegedly deflationary and inflationary aspects of the same statement" if appointed class action lead plaintiff.

---

[2]     Goldman's speculation also ignores that PSSP/TPP's letters (ECFs 29-2, 29-4) confirmed that they fully delegated investment authority to outside managers.

5

Finally, preliminary analysis of Blue Owl institutional investor holdings, including SEC Form 13F filings, indicates that during the Class Period, large institutional investors held **88% to 96.6%** of shares available (*i.e.*, shares outstanding plus short interest minus insider-held shares). *See* Reply Declaration ¶¶5-6 submitted herewith.[3]  That statistic illustrates PSSP/TPP's typicality and adequacy.  Goldman has not proven, *e.g.*, that PSSP/TPP's holding of BOF bonds is atypical of institutional investors, many of whom likely hold Blue Owl-related debt or other securities.  Absent such proof, PSSP/TPP's adequacy and typicality to represent the Class, particularly where institutions hold nearly all available Blue Owl shares, is not rebutted.  PSSP/TPP strongly dispute Goldman's unsubstantiated accusation of adverse interests.

## III.   Goldman's Arguments and Conduct Demonstrate His Unfitness

A PSLRA lead plaintiff must place the class's interests first.  *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (lead plaintiff must "serve as an adequate fiduciary for a class").  Courts rightly discredit movants taking positions contrary to the class to secure that leadership role.  *See*, *e.g.*, *Amberber v. EHand Holdings Ltd.*, 2022 WL 409096, at *4-*5 (S.D.N.Y. Feb. 10, 2022) (competing movant's argument for a shorter class period failed to rebut presumption, was contrary to class's best interests, and exposed him to a unique defense).

Goldman's arguments demonstrate ___**his**___ unfitness.  He argues that fraud damages here should be "offset" by BOF interest payments.  But: "With respect to this affirmative defense, it is Defendant who bears the burden of proof regarding its alleged right to recoupment or offset." *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 398-99 (S.D.N.Y. 2014).  Goldman's self-interested, short-sighted, poorly-reasoned attempt to concede an "offset" defense now, in false hope of strengthening his motion, would disproportionately damage

---

[3]   Total shares available holdings by all institutional investors was likely higher, as some are not required to file Forms 13F.

institutional investors, the most likely debt holders, whose fraud losses arise from ~**96.6%** of available Class Period shares.  Goldman's position demonstrates he is inadequate, atypical, and unfit to represent the Class.  It conflicts with the PSLRA's express preference for institutional investors and unwisely provides fodder for Defendants at class certification and trial.[4]  Goldman's "offset" stance potentially harms **all** Class members by reducing class-wide damages (and case settlement value).  It **disqualifies** him as a class fiduciary.

Goldman's conduct also offends two key PSLRA goals: (1) providing an orderly lead plaintiff appointment process; and (2) curbing attorney-driven litigation.  *See*, *e.g.*, *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 57, 64 (S.D.N.Y. 2022) (PSLRA enacted to establish "orderly" process to select leadership); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) (PSLRA "enacted to address perceived abuses…created by lawyer-driven litigation").  Here, notwithstanding losses **13.5x larger**, PSSP/TPP voluntarily provided information to a competing movant lacking entitlement to discovery, to promote "judicial economy" and "swift resolution to the competing lead plaintiff motions" and "to avoid unnecessarily burdening the Court and to conserve judicial resources."  ECFs 29-2 at *2, 29-4 at *4.  In response, Goldman's counsel launched meritless attacks, consuming judicial and party resources by prolonging this motion practice, while conspicuously failing to respond when asked if Goldman knew of and approved these tactics.  *See* ECF 29-4 at *4.  Further indulging this conduct would impede orderly lead plaintiff appointment and reward lawyer-driven litigation tactics the PSLRA intended to reform.

---

[4]     Moreover, Goldman's conceded "offsets," if upheld, would create logistical headaches for class-wide settlement or recovery administration, seemingly necessitating Class members to submit years' worth of unrelated, pre-Class Period holdings documentation, and many passive benefits, impeding timely payment distribution.

**IV.      Goldman Does Not "Demonstrate" "Reasonable Basis" for Discovery**

Goldman's discovery request should be denied.  The PSLRA imposes a discovery stay, 15 U.S.C. §78u-4(b)(3)(B), with a narrow exception at this stage only "if [a] plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class; or…is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)-(bb).  Goldman concedes the standard (Opp. at 1) but fails to meet it.

PSSP/TPP have demonstrated Rule 23 adequacy.  They are sophisticated institutional investors, retained highly qualified counsel, have no conflict of interest with the Class, are committed to pursuing full class-wide recovery, and with losses of $116,223 demonstrate financial interest sufficient to ensure vigorous advocacy for the Class.

Goldman nevertheless seeks "the opportunity to conduct discovery" "if the Court determines…further investigation *may* yield disqualifying information."  Opp. at 9.  He dilutes the statutory standard to a low bar applicable in *every* case.  That PSSP/TPP "will certainly face more invasive discovery" in later stages (*id.* at 10) is true of *all* lead plaintiff movants, Goldman included.  He falsely claims "PSSP/TPP's story has changed and they continue to be elusive regarding basic facts about their relationship with Blue Owl."  *Id.*  PSSP/TPP promptly responded to Goldman's letters, clarifying as requested, notwithstanding his objectionable inquiries and non-entitlement to any response.  Given his overbroad requests' faults, "full denial" of anything is impossible (and Goldman provided no similar denial).  Goldman fails to explain how his requested discovery would impact any relevant inquiry, particularly as PSSP/TPP delegated investment authority.

Goldman abandoned the only case (*Groupo Televisa*) his letters cited (ECF 29-3 at *2), which PSSP/TPP's counsel explained was inapposite.  ECF 29-4 at *2.  So, too, are his new

8

authorities, where reasonable basis for discovery into a movant's adequacy was found where that movant engaged in short selling and day trading (*Barrick Gold*) or acquired securities by unusual means (*B. Riley*).  Here, no comparable record exists providing a reasonable basis for discovery, only Goldman's speculation.  PSSP/TPP's voluntary transparency provided Goldman considerable information, when he was entitled to none, which was neither "proof" rebutting the statutory presumption favoring PSSP/TPP nor "reasonable basis" for discovery.

## CONCLUSION

PSSP/TPP respectfully ask the Court to: (1) grant their motion; (2) deny Goldman's request for discovery; and (3) deny Goldman's motion.

Dated:  February 24, 2026                    Respectfully submitted,

POMERANTZ LLP

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movants the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan and Proposed Lead Counsel for the Class*

9

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan, certifies that this brief contains 2,494 words, which complies with the word limit of Local Civil Rule 7.1(c) and Rule V.d. of this Court's Individual Practices in Civil Cases.

Executed on February 24, 2026.

/s/ Matthew L. Tuccillo
Matthew L. Tuccillo