**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDER GOLDMAN,<br>Plaintiff,<br>-against-<br>BLUE OWL CAPITAL INC., et al.,<br>Defendants. | 25-CV-10047 (JPC) (OTW)<br><br>**OPINION & ORDER** |

**ONA T. WANG, United States Magistrate Judge:**

## I. INTRODUCTION

In December 2025, Alexander Goldman ("Goldman") filed this putative class action under the federal securities laws on behalf of purchasers of certain Blue Owl Capital Inc. ("Blue Owl") securities between February 6, 2025, and November 16, 2025, inclusive (the "Class Period"). (Compl., ECF 1). The Complaint alleges that Blue Owl, its Co-CEOs Douglas I. Ostrover and Marc S. Lipschultz, and CFO Alan Kirshenbaum (altogether, "Defendants") violated the Exchange Act §§10(b) and 20(a), by making materially false and/or misleading statements and failing to disclose material adverse facts about Blue Owl's business, operations, and prospects. The Complaint further alleges that Blue Owl investors, including Goldman and the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan (the "Nova Scotia Plans"), suffered significant losses and damages following disclosures of the alleged fraud, which caused the prices of Blue Owl securities to fall sharply. (Compl., ECF 1, ¶¶ 1–14).

Pending before the Court are two cross-motions, each seeking appointment as lead plaintiff and appointment of their respective attorneys as lead counsel pursuant to

15 U.S.C. § 78u-4(a)(3). These movants are: (1) Alexander Goldman, the individual who filed the putative class action; and (2) the Nova Scotia Plans. Each assert that they are the most adequate lead plaintiff and that they meet Federal Rule of Civil Procedure Rule 23's requirements. For the reasons set forth below, the Court: (1) appoints the Nova Scotia Plans as lead plaintiff; and (2) appoints the Nova Scotia Plans' counsel, Pomerantz LLP, as lead counsel.

## II. BACKGROUND

### A. Factual Background

Blue Owl is an asset management firm specializing in alternative investment solutions, primarily private credit. (Compl., ECF 1, ¶¶ 2, 25). Blue Owl's private credit business manages six business development companies ("BDCs"), through which investors can access the private credit loan market. *Id.* ¶¶ 4, 28–29.

The Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about Blue Owl. *Id.* ¶¶ 13, 42. Specifically, the Complaint alleges "Defendants failed to disclose to investors that: (1) Blue Owl was experiencing meaningful pressure on its asset base from BDC redemptions; (2) as a result, Blue Owl faced undisclosed liquidity issues; (3) as a result, Blue Owl would be likely to limit or halt redemptions of certain BDCs; and (4) that, as the foregoing's result, Defendants' positive statements about Blue Owl's business, operations, and prospects were materially misleading and/or lacked a reasonable basis." *Id.*

### B. Procedural Background

On December 3, 2025, Goldman filed the Complaint and published a notice of this action. (ECF 20-1). On February 2, 2026, Goldman and the Nova Scotia Plans filed their motion to serve as lead plaintiff and to appoint counsel. (Goldman Mem., ECF 19; Nova Scotia Plans Mem., ECF 23). On February 17, 2026, both movants filed their opposition to the others' motion. (Goldman Opp'n, ECF 27; Nova Scotia Plans Opp'n, ECF 28). On February 24, 2026, both movants filed their reply to the others' motion. (Goldman Reply, ECF 35; Nova Scotia Plans Reply, ECF 36).

## III. DISCUSSION

### A. Selecting the Lead Plaintiff

#### i. Legal Standard

Motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under federal securities laws are governed by the Private Securities Litigation Reform Act ("PSLRA"). *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 568-569 (S.D.N.Y. 2015); *Bo Young Cha v. Kinross Gold Corp.*, No. 12-CV-1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012). The PSLRA directs the Court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has either "filed a complaint or made a motion in response to a notice"; (2) has the "largest financial interest in the relief sought by the class," as determined by the Court;

and (3) "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," which governs class actions. *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc).

**ii. Notice**

Notice to class members must be published no later than 20 days after a complaint is filed. *Id.* § 78u-4(a)(3)(A)(i). Such notice must include the pendency of the action, the claims asserted therein, and the purported Class Period. *Id.* § 78u-4(a)(3)(A)(i)(I). It must also include that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. *Id.* § 78u-4(a)(3)(A)(i)(II). Goldman filed timely and sufficient notice of the action. On the same day he filed the Complaint, December 3, 2025, Goldman published a notice of this action on Business Wire. (ECF 20-1). The notice included the pendency of the action, the claims asserted therein, the purported Class Period, and the 60-day deadline for investors to move the court to serve as lead plaintiff. *Id.* Both Goldman and the Nova Scotia Plans filed timely motions to serve as lead plaintiff. On February 2, 2026, within the 60-day window, both Goldman and the Nova Scotia Plans filed timely motions to serve as lead plaintiff. (Goldman Mem., ECF 19; Nova Scotia Plans Mem., ECF 23).

**iii. Financial Interest**

In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97-CV-2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011). These "Lax" factors include:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., 269 F.R.D. 291, 293 (S.D.N.Y. 2010)*

Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant. *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, most courts simply determine which potential lead plaintiff has suffered the greatest total losses.") (citation omitted) (collecting cases); *Strougo v. Brantley Cap. Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007).

Here, the Nova Scotia Plans have suffered the greatest total losses, approximately $116,223 or $208,041,[1] (Nova Scotia Plans Opp'n, ECF 28 at 8), compared to Goldman's loss of $8,541.10. (Goldman Mem., ECF 19 at 7). The Nova Scotia Plans also purchased more shares during the Class Period, total and net, and expended more funds on the shares they purchased, than Goldman did. (*Compare* ECF 30-1 and ECF 20-2). Thus, all of the *Lax* factors weigh in favor of the Nova Scotia Plans, whether they are considered collectively or separately, and the Nova Scotia Plans have the largest financial stake in this litigation. (Nova Scotia Plans Opp'n, ECF 28 at 8) (chart comparing all *Lax* factors between Goldman and the Nova Scotia Plans).

[1] Following either the LIFO or FIFO method of calculating the losses. (Nova Scotia Plans Opp'n, ECF 28 at 8; ECF 30-1). The Nova Scotia Plans originally calculated their losses as $117,295 or $210,380. (Nova Scotia Plans Mem., ECF 23 at 8). The original losses incorrectly characterized two post-Class-Period transactions and were revised. (Nova Scotia Plans Opp'n, ECF 28 at 8).

**iv. Rule 23 Requirements**

The PSLRA's final requirement is that the proposed lead plaintiff satisfies Rule 23's requirements for class certification. Although Rule 23 provides that a party must satisfy four requirements to serve as a class representative, only two—typicality and adequacy—must be addressed in the context of deciding a motion to appoint a lead plaintiff. *Bo Young Cha*, 2012 WL 2025850, at *6. "When moving for appointment as lead plaintiff, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'" *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016) (quoting *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)).

Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–174 (S.D.N.Y. 2010) (citation omitted). A showing that a lead plaintiff's claims "'arise[ ] from the same course of events' and it makes 'similar legal arguments to prove the defendant[s'] liability' as the other putative class members,' … is all that is required to demonstrate typicality at this stage. *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015).

Both Goldman and the Nova Scotia Plans are sufficiently typical class representatives. Both Goldman and the Nova Scotia Plans bring claims that are typical of the class they each propose to represent. Their claims arise from the same alleged conduct by defendants, and they make identical legal arguments regarding the defendants' liability. They each purchased Blue Owl shares during the Class Period set out in the Complaint, and each then sold them at a

loss. (Nova Scotia Plans Opp'n, ECF 28 at 8). Both Goldman and the Nova Scotia Plans are sufficiently typical and qualify for the PSLRA's presumptive lead-plaintiff provision.

A lead plaintiff is adequate where he or she "does not have interests that are antagonistic to the class that he [or she] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he [or she] seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006). A lead plaintiff should have a "sufficient interest in the outcome to ensure vigorous advocacy on behalf of the class." *Petrobas*, 104 F. Supp. 3d at 624 (citation omitted); see *Kux-Kardos*, 151 F. Supp. 3d at 478.

Both Goldman and the Nova Scotia Plans would be adequate class representatives. Neither party has interests "antagonistic" to the class.[2] Each has sufficient interest in the outcome to ensure vigorous advocacy on behalf of the class. Both have retained experienced and qualified proposed lead counsel. Glancy Prongay Wolke & Rotter LLP (counsel for Goldman) and Pomerantz LLP (counsel for the Nova Scotia Plans) each have extensive experience as lead counsel in securities class actions. (ECF 20-3; ECF 24-3). Thus, both Goldman and the Nova Scotia Plans satisfy the PSLRA's preliminary assessment of Rule 23's adequacy requirement.

**v. Rebuttal**

Because the Nova Scotia Plans have the largest financial interest in this case and satisfy the PSLRA's preliminary Rule 23 analysis,

[2] Goldman's assertion that the Nova Scotia Plans have a "conflict of interest" will be addressed below.

they are entitled to presumptive lead status. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Goldman contends, however, that the Nova Scotia Plans have "undisclosed investments with Blue Owl and may have other private investments with Blue Owl" that may expose them to unique defenses, which would rebut that presumption. (Goldman Opp'n, ECF 27 at 6); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Specifically, he argues that the Nova Scotia Plans "invested in previously-undisclosed Blue Owl [sic] debt securities" before the Class Period and that the Nova Scotia Plans received more than $32,000 "in interest payments on their . . . Blue Owl [sic] bonds ***during the [C]lass [P]eriod***." *Id.* at 7, 9 (emphasis in original). Goldman asserts that any other Nova Scotia Plans investments in "Blue Owl" securities, their receipt of interest payments, their failure to disclose this investment, the possibility that they had access to non-public information about Blue Owl, a potential conflict of interest or conflicting obligations, the likelihood of written agreements governing dispute resolution and other restrictions, and "[t]he fact that the Nova Scotia Plans have not foreclosed this possibility at the outset is disqualifying." *Id.* at 10–13.

The Nova Scotia Plans dispute all of Goldman's arguments. Principally, the Nova Scotia Plans clarify that the "Blue Owl" securities: (1) are bonds issued by a non-party, Blue Owl Finance LLC, an indirect subsidiary of Blue Owl, (2) were purchased before the Class Period, (3) were not transacted in the Class Period, and (4) were not required to be disclosed in the Nova Scotia Plans' Certifications. (Nova Scotia Plans Reply, ECF 36 at 6–8).

I agree, and the rest of Goldman's arguments are based on mere speculation of the possibility that the Nova Scotia Plans have other private investments or contractual relationships with Blue Owl, are clients of Blue Owl, are privy to non-public periodic reports,

have a conflict of interest, or are governed by a written agreement that limits their litigation rights. *Id.* at 7–8.

**1. Rebuttal Standards**

"[T]o rebut the presumption in favor of the movant with the greatest financial loss, there must be 'proof' of a non-speculative risk that the movant will not be adequate." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016). Courts in this District have recognized that the meaning of the PSLRA's term "proof" is "not firmly established," and have treated it as roughly "synonymous with 'evidence.'" *Id.* (citation omitted). And, because the PSLRA requires proof that the movant is merely "subject to" unique defenses, "many courts have rejected appointments of lead plaintiffs based on potential risks." *Id.* at *3 (emphasis in original) (collecting cases).

Thus, "[b]efore disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed." *Gross v. AT & T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019). Rather, it must only find "at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses." *Batter v. Hecla Mining Co.*, No. 19-CV-05719 (ALC), 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (citation omitted). This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may "divert attention from the substance of the basic claim," and class members are "entitled to be represented by someone unhindered by" such distractions. *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007) (citation omitted).

**2. Goldman Did Not Rebut the Presumption**

The only evidence presented by Goldman is that the Nova Scotia Plans received interest payments from an indirect subsidiary of Defendant Blue Owl as a result of debt instruments that were purchased before the Class Period. (Goldman Opp'n, ECF 27 at 9). The debt instruments owned by the Nova Scotia Plans are not "Blue Owl" securities that should have been disclosed in the Nova Scotia Plans' Certification, notwithstanding Goldman's imprecise use of his own defined term. Goldman's own Complaint asserts that the Blue Owl securities at issue are Blue Owl Capital Inc.'s common shares that traded under the symbol "OWL." (*See, e.g.*, Compl., ECF 1 at ¶¶19–20; ECF 20–1, 20–2) The Complaint further asserts that the losses suffered by OWL shareholders resulted from false and/or misleading statements by the Defendants relating to redemptions and liquidity in connection with Blue Owl Capital Corporation ("OBDC") and Blue Owl Capital Corporation II ("OBDC II"). (Compl., ECF 1, *passim*). Indeed, there is no mention in the Complaint of Blue Owl Finance LLC.

There is also no evidence – only speculation and conclusory assertions[3] – that the Nova Scotia Plans' receipt of interest payments renders the Nova Scotia Plans inadequate or atypical such that they should be disqualified from representing the putative class. There is no "unique defense" identified by Goldman, because Goldman has not met his burden to show how the interest payment from a nonparty qualifies as a unique defense in this securities action. Nor is

[3] Moreover, even if discovery later reveals that the Nova Scotia Plans (or other putative class members) held other investments in Blue Owl, that would be an issue to be addressed in the context of class certification or the creation of a separate subclass, at a later time. *See, e.g. Khunt v. Alibaba Group Holding Ltd.,* 102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015) (collecting cases for the proposition that "if pre-trial discovery reveals rifts within the class that require subclasses, the issue will be addressed at that time.")

the Nova Scotia Plans' omission of these interest payments a disqualifying event. As discussed by the Nova Scotia Plans, Goldman's cases are inapposite, as they concern materially inaccurate or incomplete representations about transactions in the very securities at issue in the fraud case. (Nova Scotia Plans Reply, ECF 36 at 8). Accordingly, I find that Goldman has not rebutted the presumption that the Nova Scotia Plans should be granted lead plaintiff status.[4]

**B. Appointing Lead Counsel**

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Nova Scotia Plans have selected the law firm of Pomerantz LLP. Having reviewed the firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds that this firm is qualified to serve as lead counsel. Accordingly, the Court appoints Pomerantz as lead counsel.

[4] Goldman requests discovery, but he has not met the requirements. (Goldman Opp'n, ECF 27 at 13). The PSLRA permits discovery only if "the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). A reasonable basis can be established through proof or specific claims. *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013). Goldman's claim that the Nova Scotia Plans' "story has changed in a matter of days and they continue to be elusive regarding basic facts about their relationship with Blue Owl [sic]" is not relevant because they mischaracterize their definition of Blue Owl. (Goldman Opp'n, ECF 27 at 14). Goldman continues to equivocate Blue Owl with Blue Owl Finance. Goldman is not entitled to discovery.

## II. CONCLUSION

The Clerk of Court is respectfully directed to terminate the motions pending at ECF 18 and 21.

The parties are directed to meet and confer, then file a joint letter proposing a briefing schedule for the remaining pre-class certification procedural steps by **Wednesday, August 12, 2026.**

SO ORDERED.

*s/ Ona T. Wang*

Dated: August 7, 2026
New York, New York

**Ona T. Wang**
United States Magistrate Judge